# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MARCUS WRACK,

    Plaintiff,

v.

    Case No. 2:07-CV-12196

CITY OF DETROIT, a municipal
corporation, MICHAEL PARISH,
and MICHAEL OSMAN, Detroit
Police Officers,

    Defendants.
_____/

## OPINION AND ORDER DISMISSING PLAINTIFF'S STATE LAW CLAIMS

Plaintiff Marcus Wrack initiated this action on May 21, 2007, against Defendants City of Detroit and Police Officers Michael Parish and Michael Osman. Before the court is Plaintiff's complaint, which alleges the following counts:

    I) violations of constitutional rights secured by the Fourth Amendment and actionable under 42 U.S.C. § 1983,

    II) unlawful searches under Mich. Comp. Laws § 764.25(b),

    III) assault and battery,

    IV) gross negligence,

    V) intentional infliction of emotional distress and

    VI) violations of Michigan Civil Rights Act under Mich. Comp. Laws § 37.2103.

Only the first count states a claim under federal law; the other five counts allege claims under state law.

As a preliminary matter, the court has original jurisdiction over Plaintiff's section 1983 claim. 28 U.S.C. § 1331. Because Plaintiff's state law claims arise out of the same alleged incidents and share a common nucleus of operative fact, supplemental jurisdiction could be proper. 28 U.S.C. § 1367. However, the court now considers if granting supplemental jurisdiction is in the interest of judicial economy, convenience, fairness and comity. The court determines that it is not, and will therefore dismiss Plaintiff's state law claims.

## I. BACKGROUND

Plaintiff's claims arise from events that transpired following routine traffic stops by the individual Defendants of Plaintiff's vehicle, on or about February 9 and 12, 2006. Plaintiff alleges that Defendants Parish and Osman ordered him out of the vehicle and used excessive force in handcuffing and searching Plaintiff without probable cause or reasonable suspicion of criminal activity. (Compl. at ¶¶ 12, 14.) Plaintiff further alleges that, during the course of the traffic stops, either Defendant Osman or Parish performed an unlawful body cavity search of Plaintiff by "inserting a finger into [P]laintiff's anus" without a valid warrant, written authorization or probable cause. (*Id.* ¶¶ 13-14.)

## II. DISCUSSION

A district court has the power to dismiss or remand claims *sua sponte* for lack of subject matter jurisdiction. *See, e.g., Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir. 1998). Claims with original jurisdiction in a district court have either federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. § 1332. In some circumstances, additional claims alleging violations of only

2

state law may be heard under the supplemental jurisdiction granted pursuant to 28 U.S.C. § 1367.

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), the Supreme Court broadly authorized federal courts to assert jurisdiction over state law claims when there existed a "common nucleus of operative fact" compromising "but one constitutional 'case,'" so long as the court had original jurisdiction over at least one claim. *Gibbs*, 383 U.S. at 725. While this decision granted district courts broad power over pendent state claims, it also recognized discretion in hearing such claims. "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over the state claims . . . ." *Id.* at 726. The Court stated that pendent party jurisdiction may be denied "if the federal claims are dismissed before trial," if "it appears that the state issues substantially predominate," or "if the likelihood of jury confusion" would be strong without separation of the claims. *Id.* at 726-27.

Congress later codified the power of a federal court to hear state claims. 28 U.S.C. § 1367. Similar to the standards articulated in *Gibbs*, the statute recognizes a federal district court's discretion to decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction,

3

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* Subsections two and four apply to this case.

Though section 1367 technically superseded *Gibbs*, courts agree that "the exercise of discretion . . . is still informed by whether remanding the pendent state claims comports with the underlying objective of 'most sensibly accommodating' the values of 'economy, convenience, fairness and comity.'" *Executive Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557(9th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

### A. Dismissal Pursuant to 28 U.S.C. § 1367(c)(4)

A district court may deny supplemental jurisdiction pursuant to section 1367(c)(4) if, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4) (2006). "Congress's use of the word 'other' to modify 'compelling reasons' indicates that what ought to qualify as 'compelling reasons' for declining jurisdiction under subsection (c)(4) should be of the same nature as the reasons that gave rise to the categories listed in subsections (c)(1)-(3)." *Executive Software*, 24 F.3d at 1557. Once the court decides that there are compelling reasons to decline jurisdiction, the factors that inform this decision usually will demonstrate how the circumstances confronted are "exceptional." *Id.* at 1558.

#### 1. "Compelling Reasons" for Dismissing Plaintiff's State Law Claims

Courts generally accept that "compelling reasons for the purposes of [§ 1367] (c)(4) . . . should be those that lead a court to conclude that declining jurisdiction best accommodates the values of economy, convenience, fairness and comity." *Id.* at 1557

(internal citations omitted); see also *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994). When deciding whether to agree or decline to exercise jurisdiction over supplemental state claims, the court considers the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims (including the possibility of jury confusion).

Litigation in federal court that mixes federal law claims with supplemental state law claims can cause procedural and substantive problems; in the interests of judicial economy and convenience, these problems should be avoided. *See Executive Software*, 24 F.3d at 1557. Even where, as in the present case, the federal and state claims arise out of the same factual background, the simultaneous litigation of such claims may prolong pre-trial practice, complicate the trial, lengthen and make more complex the jury instructions leading to potential confusion of the jury, result in inconsistent verdicts, and cause post-trial problems with respect to judgment interest and the availability of prevailing party attorney fees. Consequently, the apparent judicial economy and convenience to the parties of a court exercising supplemental jurisdiction over state claims may be substantially offset by problems simultaneously created. The court will review the federal and state claims in some detail to determine if supplemental jurisdiction should be exercised over the state claims.

### a. Applicable Legal Standards

Plaintiff's state law claims would substantially expand the scope of this case beyond that necessary and relevant to the federal claim under 42 U.S.C. § 1983. First, the federal standard for evaluating whether unlawful or excessive force was used by

5

police officers is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal citations omitted); *see also Saucier v. Katz*, 533 U.S. 194, 210 (2001).

Plaintiff's equivalent state law claims, on the other hand, focus almost entirely on the officers' subjective mental state. Under Michigan law, assault and battery, gross negligence, and intentional infliction of emotional distress are all intentional torts. *See Young v. Morrall*, 101 N.W.2d 358, 362 (Mich. 1960); *Sudul v. City of Hamtramck*, 562 N.W.2d 478, 479 (Mich. Ct. App. 1997). As such, the question of intent and/or willfulness is the central element of each claim, and the focus is on the mental state of the alleged wrongdoer to determine if he acted intentionally, arbitrarily or maliciously. *Young*, 101 N.W.2d at 362.

Exercising supplemental jurisdiction over the state law claims would require additional testimony, evidence and a probing into the defendant officers' alleged mental state at the time of the alleged assault. Additionally, the state law claims would require a jury to understand, distinguish, and apply two distinct standards of reasonableness in the same case. This would result in more lengthy jury instructions, the potential for jury confusion and inconvenience to the parties and the court that would not be present if the claims were tried separately.

### b. Available Defenses

The nature and use of available defenses also differs considerably in Plaintiff's state and federal claims. Because even deadly force is constitutionally permissible under some circumstances (*see, e.g., Tennessee v. Garner*, 471 U.S. 1 (1985)), proof

6

of Defendant's use of force alone will not satisfy Plaintiff's federal claim. *Miller v. Taylor*, 877 F.2d 469, 472 (6th Cir. 1989). Instead, to succeed under section 1983, "Plaintiff [must] show that [the Officer's] use of force was unjustified in order to state a constitutional deprivation." *Id.* Such is not the case for Plaintiff's state law claims. Instead, proof of force plus subjective intent will shift the burden to each Defendant to justify such force as reasonable and necessary under the affirmative defenses of self-defense or defense of others. *Id.*; *see also Ealey v. Detroit*, 375 N.W.2d 435, 437 (Mich. Ct. App. 1985). This shifting burden, coupled with the different application of defenses to different claims at different stages, raises the probability of jury confusion and inefficiency.

### c. Immunity

Plaintiff's state and federal law claims also entail different versions of immunity, a further complication. Under federal law, "government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining if a government official is entitled to such qualified immunity, a court must first determine if a federal right was violated and, if so, whether that right was "so clearly established that a reasonable official would understand that his particular conduct would violate that right." *Wilkins v. City of Royal Oak*, No. 04-73276, 2005 U.S. Dist. LEXIS 42474, at * 26 (E.D. Mich. Aug. 17, 2005). A court must also determine if the officer was performing a discretionary function at the time. *Id.* This immunity is relatively

7

straightforward and turns on the objective reasonableness of the official's actions. *See generally Harlow*, 457 U.S. 800.

Immunity under state law is remarkably different, as it applies a subjective standard of review to the official's actions. Unlike federal qualified immunity, officers facing claims of intentional torts "are not shielded by [Michigan's] governmental immunity statute." *Sudul*, 562 N.W.2d at 479; *see* Mich. Comp. Laws § 691.1407(3). Unlike the immunity applicable to section 1983 claims, immunity from state torts under Michigan law depends upon an officer's subjective intent at the time of the alleged assault. And, to further complicate the matter, application of this immunity is not a straightforward process:

> Governmental immunity [under Michigan law] has been, at best, a confusing area of the law for the bench and bar of our state for many years and, unfortunately, attempts to explain it have often resulted in increasing the quagmire in which we collectively have found ourselves on this subject.

*Sudul*, 562 N.W.2d at 490 (Murphy, J., dissenting). The differences in the applicability of governmental immunity between Plaintiff's federal and state claims, as well as the "quagmire" that has evolved regarding the application of such immunity to state claims under Michigan law, are additional factors that would complicate the simultaneous trial of federal claims, confuse the jury and inconvenience the parties and the court.

### d. Vicarious Liability

Another area of conflict between the federal and state claims involves the question of vicarious liability. The law of municipal liability under section 1983 is governed by *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny. Under this line of cases, "the doctrine of *respondeat superior* is not a basis for

rendering municipalities liable under § 1983 for the constitutional torts of their employees." *Monell*, 436 U.S. 658, 662 n.7. Rather, municipal liability depends upon whether "someone in a supervisory capacity . . . at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending employee." *Sudul*, 562 N.W.2d at 482.

In Michigan, the law of municipal liability is markedly different. Unlike federal municipal liability, which examines whether the municipality authorized or acquiesced in the alleged conduct, state liability is precluded by the immunity statute, which states, "a governmental agency is immune from tort liability if the agency is engaged in the exercise or discharge or a governmental function." Mich. Comp. Laws § 691.1407(1). Under the statute, a municipality can only be held liable "with respect to providing medical care or treatment to a patient." Mich. Comp. Laws § 691.1407(4).

Under the Michigan statute, municipalities enjoy broad immunity, and there is no question regarding authorization or acquiescence. As such, a municipality could be held liable only under the federal claim. This dichotomy would likely confuse the jury, and could reasonably lead to a verdict that exonerates the governmental agency from section 1983 liability simply because it cannot be liable for the state tort actions. Such a result would be contrary to the interests of justice.

### e. Recoverable Damages

Recoverable damages are drastically different for Plaintiff's federal and state claims. Under federal law, a successful section 1983 Plaintiff may recover punitive damages against individual defendants. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). In direct contrast, "[i]n Michigan, the courts . . . refuse to allow the

9

recovery of punitive damages." *Fellows v. Superior Prods. Co.*, 506 N.W.2d 534, 536 (Mich. Ct. App. 1993) (quoting *In re Disaster at Detroit Metro. Airport*, 750 F. Supp. 793, 805 (E.D. Mich. 1989)). As a result, Plaintiff would be entitled to seek punitive damages against the officers for his section 1983 claims but not for the remainder of his claims.

Punitive damages, by definition, "are not intended to compensate the injured party, but rather to punish the tortfeasor." *City of Newport*, 453 U.S. at 266. The jury would be instructed that they are permitted to "punish" for an egregious Fourth Amendment excessive force violation but that they are not so permitted for even an egregious violation of state laws of assault and battery, gross negligence or intentional infliction of emotional distress. This difference could easily lead to an artificially -- and unfairly -- high award for a proven section 1983 claim in order to "compensate" for the jury's inability to award punitive damages for the state law claims. It could also result in an unfairly low award if the jury were to incorrectly conclude that, since Michigan law does not permit punitive damages, the proven federal claim is not deserving of such an award either. In either scenario, the different treatment of punitive damages under state and federal law could result in jury confusion, lengthy jury instructions and an unfair verdict.

### f. Compelling Reasons Exist to Dismiss Plaintiff's State Claims

The potential for jury confusion is a compelling reason for a district court to decline to exercise supplemental jurisdiction. *Gibbs*, 383 U.S. at 727; *Barbetta v. Chemlawn Services Corp.*, 669 F. Supp. 569, 571 (W.D.N.Y. 1987); *Gasque v. King*, No. 2:90CV00470, 1991 U.S. Dist. LEXIS 19260, at *5-6 (M.D.N.C. Oct. 4, 1991); *Padilla v. City of Saginaw*, 867 F. Supp. 1309, 1315 (E.D. Mich. 1994); *Blue Dane*

10

*Simmental Corp. v. American Simmental Ass'n*, 952 F. Supp. 1399, 1404 (D. Neb. 1997); *see also* Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3567.1, n. 46. (2d ed. 1984).  In considering this potential, as well as the interests of economy, convenience, fairness and comity, the court finds that the state claims should be dismissed.  To exercise supplemental jurisdiction over these claims would result in confusion, inconvenience and potentially unfair results given the systematic disparity between these claims, including their various legal standards, available defenses, potential immunity from suit, potential vicarious liability and potentially recoverable damages.  Therefore, the court will dismiss without prejudice the state law claims of assault and battery, gross negligence, intentional infliction of emotional distress and violations of Mich. Comp. Laws §§ 37.2103 and 764.25(b).

### 2.  This Case Presents "Exceptional Circumstances"

Courts must ensure that the reasons for declining to exercise supplemental jurisdiction identified as "compelling" are not deployed in circumstances that are not "exceptional."  *Executive Software*, 24 F.3d at 1558.  Courts agree that the inclusion of the phrase "exceptional circumstances" limits the broad discretion that district courts once entertained under *Gibbs* to deny supplemental jurisdiction in any case.  *See, e.g., Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998); *Executive Software*, 24 F.3d at 1558.  However, Congress only "sounded a note of caution" and did not restrict a district court's ability to dismiss claims only in cases that were "ridiculous" or "impractical."  *Executive Software*, 24 F.3d at 1558, 1560 (citing *Hays County Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992) (holding that exceptional

circumstances were present when parallel state proceedings were underway and therefore the adjudication of state claims would be a "waste of judicial resources.")).

The court finds, in weighing the likelihood of jury confusion, judicial inefficiency, substantial inconvenience to the parties and potential unfairness in outcome, which could readily result by attempting to resolve all claims in a single trial, that exceptional circumstances are present in this case. Though there would be some duplication of effort required by Plaintiff and Defendants in this case if Plaintiff decides to pursue both claims in separate fora, the court finds that any advantages gained by trying all claims together are outweighed by the potential for confusion of the issues, legal theories, defenses and possible relief. Thus, the court will not exercise supplemental jurisdiction and will dismiss without prejudice all state law claims.

### B. Dismissal Pursuant to § 1367(c)(2)

Separately, a district court may decline to exercise of supplemental jurisdiction pursuant to section 1367(c)(2) if "the [state] claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(4). As already discussed in detail, the state claims presented here implicate myriad problems, including the need to introduce evidence inapplicable to -- indeed inconsistent with -- the evidence relevant to the federal claim, additional witnesses, disparate legal theories on both claims and defenses and significantly expanded and contradictory jury instructions. The court finds that the state claims presented in this case would, for these reasons, predominate over the section 1983 federal claim over which the court has original jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(2), the court

will not exercise supplemental jurisdiction and will dismiss without prejudice all state law claims.

In sum, Plaintiff's state law claims for assault and battery, gross negligence, intentional infliction of emotional distress, and violations of Mich. Comp. Laws §§ 37.2103 and 764.25(b) do not have original jurisdiction in federal court. The inclusion of Plaintiff's state claims with Plaintiff's claim for deprivation of civil rights pursuant to 42 U.S.C. § 1983 could lead to jury confusion, judicial inefficiency, inconvenience to the parties and an unfair outcome. Additionally, these claims would predominate over Plaintiff's section 1983 federal claim. Pursuant to 28 U.S.C. §§ 1367(c)(2) and (4), the court in its discretion will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly,

### III. CONCLUSION

IT IS ORDERED that all of Plaintiff's state law claims including, without limitation, violation of Mich. Comp. Laws § 764.25(b) (Count II), assault and battery (Count III), gross negligence (Count IV), intentional infliction of emotional distress (Count V), and violation of Mich. Comp. Laws § 37.2103, are hereby DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that only Plaintiff's claim arising under federal law, 42 U.S.C. § 1983 (Count I) now remains before this court.

        S/Robert H. Cleland  
        ROBERT H. CLELAND  
        UNITED STATES DISTRICT JUDGE

Dated: July 24, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 24, 2007, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522